Case number 226070, Lisa Goins v. Saint Elizabeth Medical Center, et al., oral argument not to exceed 15 minutes per side, Ms. Tomlinson for the appellant. Good morning. Good morning. May it please the court, my name is Teresa Tomlinson. I represent the appellant's Dr. Joel Warren and his physician group Tri-State Gastroenterology and I wish to reserve 5 minutes. Very welcome. Thank you. Your honors, this is an issue of first impression not just for the circuit but nationally. This appeal arises out of an application of the Public Readiness and Emergency Preparedness Act to Ms. Goins' reaction of increased glucose levels and abdominal pain 3 days after her second COVID vaccine and the diagnostic procedures of biopsy and endoscopy performed by Dr. Warren during her hospital admission to determine the cause of and treatment for that reaction. To put a fine point on the issue here today, it is whether devices used to diagnose or treat a reaction to a COVID vaccine are covered countermeasures under the PrEP Act. Congress tells us that they are under subsection I7AII of the PrEP Act and to paraphrase, Congress has told us that a qualified pandemic product is a device or product used to diagnose or treat a serious condition caused by countermeasures such as a vaccine. There are 4 critical circumstances that compel the application of the PrEP Act to this case and require the dismissal of both Dr. Warren and Tri-State. And that is first of all, Dr. Warren is a qualified person. That is undisputed and was held by the district court. Number two, both the biopsy procedures, the fine needle aspiration and the endoscopy devices which are alleged in the complaint are countermeasures under subsection I7. Number three, the complaint itself alleges that Dr. Warren both prescribed and administered this biopsy countermeasure device. That is in paragraph 23 of the complaint and makes him a covered person under subsection I2. Does the complaint allege that he did it as a countermeasure to the reaction to the COVID vaccine? Yes, your honor, it does. Okay, I've got the complaint. Where does it say that? Yes, if you start at paragraphs 22 and 23, that is where Dr. Goins comes in and prescribes and then administers the biopsy, you will see at, I believe it's paragraphs... That's kind of the history of what happened to her at the hospital. But wasn't the biopsy really just determined what was the cause? Not necessarily in response to the COVID vaccine, but her symptoms, they didn't know what they were. But it wasn't specifically to counter the vaccine. I don't see that allegation in the complaint that it was done specifically as opposed to for numerous reasons just to rule out things. No, I see where you're going, your honor. I think we first have to understand that of course this was a novel vaccine that's alleged in the complaint. It was a transformative vaccine, it was high risk because it was new, that it was a novel vaccine. And that's precisely... Which doctor said that this was likely a result of the vaccine? I don't know that that is alleged in the complaint, but it is... So no doctor thought that the abdominal pain and the spikes in blood pressure or things like that was caused by the second dose? Yes, your honor, that is absolutely in the complaint. So which doctor again thought that? I don't know which doctor, but it says the doctors... So where in the complaint does it tell us... I believe it's paragraph 27. It would be somewhere between... It would be 25 or 26, excuse me, maybe 26. It says the doctor stated it could have been a reaction to her second dose of the majority. Could have been enough to get this entire case dismissed? Yes, because this is a process of an exclusionary diagnosis. No x-ray, no urine test, no blood test is going to determine whether or not Ms. Goins had a reaction to the vaccine. This is a novel vaccine. There are not 10 years or 20 years of clinical studies to tell us how it's going to react in the human body. This is an emergency situation. That is why Congress passed the PrEP Act to make certain that when individuals, when a vaccine was discovered, that people would line up to take it, that doctors would stand and prescribe it and then treat it if there was an unknown. These people, there were no like surrounding circumstances. There was no standard of care because this simply didn't exist, neither the virus or the vaccine prior to this moment in time. So what if the doctors had said, we don't know what caused this, you know, differential diagnosis. Maybe there are four reasons that could have caused this. One maybe could have been the second dose. Do you get your case dismissed then? Yes, and that's why Dr. Goins... It could have been four things. We're not sure what the four things are. They weren't sure what the four things were when they began with, and that's why Dr. Goins is called. He's called to come in through the diagnostic process of exclusionary diagnosis. And so he comes in to see, is it a mass in her pancreas? No, it's not, he says. So that necessarily that's taken out, and they are able then to discern, as it says in paragraph 26, that it is likely a reaction to the COVID vaccine. No, it could have been. It could have been, but there's nothing else alleged in the complaint that it could have been. That is the only thing affirmatively alleged in the complaint. This complaint, as the district court held, the gravamen of it is a reaction to the vaccine. And what subsection I-7 says is that anything that counteracts, anything that's FDA approved, that a qualified person utilizes to determine whether or not there is a reaction, the diagnostic aspect of it, or how to treat it, is necessarily a countermeasure to. And there is a policy reason behind that, and it is because, as I was saying, they knew that there would be no way for certain to determine what the reactions might be because there were no studies. This was brand new. And so this exclusionary process was extraordinarily important. And Congress knew that it would be. They wanted to embolden physicians to not be distracted by the threat of litigation under this circumstance, to go in and perform these circumstances on individuals that had just taken something that was novel and untested. The entire health care industry needed this. Congress knew it years ahead of time and prepared for this as a nation so that we could respond to this national security threat to our country. And doctors like Dr. Warren stood up in that breach and made these exclusionary diagnoses. All right. You know, the problem I have is you may ultimately be correct on this, but this is at the motion to dismiss stage. I mean, we have no affidavits. We have no depositions. We really have no facts other than what's alleged in the complaint. And I think our standard of review is that the complaint must be conclusive of establishing the immunity that you're claiming here. And this could have been, rather than definitively, I did this to counteract what I expected to be the effects of COVID. I don't quite see it in the complaint. I see it kind of speculative and ambiguous as to this. And I just wonder if this motion is just premature at this point. You could supplement. I mean, your argument is a factual argument. And usually we address facts farther down the stage after the motion to dismiss stage. Well, I want to make sure, Your Honor, you understand we are bound to this complaint. I know you are. We are fine with that. The plaintiffs are bound. The court is bound. The defendants are happily bound by this complaint because it sets forth the criteria that Congress has set and directed us all, that there shall be suit immunity if there is any claim for loss of which there is a countermeasure that has been administered. Dr. Warren administered an FDA-approved countermeasure under subsection I7A2I. He did, and even the district court has found that this vaccine, which is indisputably a countermeasure, began a series of unfortunate health care events that Dr. Warren's biopsy was performed, quote, as part of the same health episode, and he found on page 15 of his initial order that it relates to the vaccine. It is the same health episode. I think that is why this medical malpractice claim is in the same complaint as the vaccine claim against the pharmacy and the drug manufacturers because it is the same scenario, I guess, but it doesn't mean that the malpractice was conclusively a countermeasure. Also, there is an issue of forfeiture of when this issue was raised, whether you raised it in your... In my remaining time, because I do want to assist the court. I am an officer of the court, however. If I could address this, it is so important. I would like to interject something here, which is it is really hard for anyone in this room or up here to hear two people talking at once, and I would be grateful as you are proceeding if the judges are asking you something, you would wait and hear what it is because it might be the question you would like to answer, and I would be grateful if we, when you are talking, would try to listen to what you are doing, but talking both at once is not helping me. I have a lot of questions about this case. Oh, well, certainly, Your Honor, and I didn't intend to do that, so I greatly apologize if so. Let me just say I'm just trying to stay within the time allotted. That's what I feel I need to do. But I was saying that as an officer of court, I do want to direct you to page 15200, column C, the very top of that. HHS has directed us that medical malpractice that is part of an alleged administration of a countermeasure are precluded claims. Suit immunity means that we address this at the very first instance. We are happy to be bound by the well-pleaded complaint rule, so is the plaintiff, so is this court, but we also are bound by the PrEP Act, which says there shall be suit immunity. Sending us back for affidavits and so forth defies that very purpose, and that is that these participants in the fight. Ms. Tomlinson, you're out of time. You can use your five-minute rebuttal now, or you can save it. Oh, I'm going to save it, Your Honor. All right, any further questions at this point? No, thank you. Thank you. Okay, let's hear from the appellee. Good morning. Good morning. Andre Rigo on behalf of Ms. Goins, and may it please the court. Your Honor, I want to address the issues that you all have brought up. In order for Dr. Warren and his associated practice to have immunity from lawsuit here, they have to show that they're a covered person that provided a covered countermeasure. In order to do that, as the courts already pointed out, they have to show that what was done was specifically done in order to address a serious condition or illness or life-threatening condition or illness that was caused by the vaccine. So they do have a standard that they have to match here. It's not could have been caused. The standard is was caused. So the issue here is there's nothing in the complaint that says that Dr. Warren's biopsy surgery, which the complaint says was done on August the 7th, it was actually done on August the 21st, that his biopsy surgery, which was done on August the 21st and she was discharged on August the 22nd, was done because the vaccine was administered and was done to address a serious or life-threatening condition. Now, the fact that she was discharged the next day, I believe indicates that it was not a life-threatening or serious condition. And there's simply no allegation that it was done to address the vaccination. Can I ask, what role does Dr. Warren's subjective intent play in your argument? Does it matter whether he thought he was addressing a reaction to the vaccine or if he was just maybe he thought there was a tumor in her pancreas and he was doing it for that reason? Would it make a difference if he didn't think he was addressing a vaccine reaction and then a couple months later we learned that, oh, indeed, this was caused by the vaccine? What's the role of subjective intent? I think subjective intent does come into play, Your Honor. And his op note, and it's reflected in the complaint, was that he thought there was a tumor, a very rare tumor, which is why he did the biopsy. He thought it might have been an insulinoma, which is an unusual tumor, and he did it because she was hypoglycemic. So if you go back to the issue of – I assume a tumor couldn't develop that fast after the vaccine, could it? There's no literature, Your Honor. I mean, tumors normally take some time, I assume. Anyway, we don't know that either. I would generally agree with you, Your Honor, but his op note says because she was hypoglycemic and because he suspected an insulinoma tumor is why he did the biopsy. So he went in, he did the ultrasound, he could not have a clear visual of the pancreas, so he did the biopsy. Of course, that caused – If the tumor is related to the vaccine, I mean, that's an issue of fact too, I guess, right? That would be an issue of fact, Your Honor, and that goes back to the statute and also to the declaration that was done by the Secretary. So it's not just the statute that we rely upon. It's also the declaration that is done by the actual Secretary. In the declaration, the Secretary said, Qualified pandemic and epidemic products that limit the harm to COVID-19 might otherwise cause are those that would not have been manufactured, administered, used, designed, developed, modified, licensed, or procured but for COVID-19 pandemic. Now, this is a pretty routine biopsy using equipment that's been FDA-approved for a long time. It certainly wasn't FDA-approved since March 17, 2020, when the initial declaration was made. Furthermore, while they cited a lot of literature in their brief about why doing the scope was a proper procedure, they don't cite any literature that links what they think the vaccine reaction was, which is hypoglycemia, to the vaccine. There's nothing cited to that. There's nothing cited to her abdominal pain being caused by the vaccine. There's simply a temporal reference, and that's what everybody's focusing on in this case. There is a recitation of the patient history. And in paragraph 14, which is a simple temporal reference, it says following the administration of the second vaccine. It doesn't say because of the second vaccine. It says following the administration. The CICP, which was brought up in their brief as a remedy, an administrative remedy, for patients who've received the vaccines, specifically says on their first page of their webpage that a temporal relationship is not sufficient. And it's not sufficient because the statute requires a causal relationship. You have to show that it was caused by the vaccine. At a minimum, it's a factual inquiry. And there's nothing in the record that shows it was caused by the vaccine. Can I ask you a jurisdictional question? Your friend mentioned this was a case of first impression, and also with cases of first impression, we ask jurisdictional questions. Are you aware of any case throughout the country dealing with the PREP Act where the courts have applied the collateral order doctrine to get you an appeal at this stage before the case is done? The only other case I was aware of was the case that was cited in the amicus brief, which is the Ohio State case, which actually cited back to Judge Bunning's case. I'm not aware of any. Anything further? I don't have anything further to say. All right, thank you. Any further questions, Judge Batchel? No, thank you. All right, five minutes rebuttal. Thank you, Your Honors. To answer the jurisdictional question, Judge, actually we did brief that in our jurisdictional paragraphs of our brief, and so certainly we stand on that. I would also refer the Court to the fact that this is actually a final judgment with a right of appeal under both Section 1442A1, because as the Court held twice, they had jurisdiction over all of the parties and all of the claims to rule on the motion to dismiss. This Court's authority of Long v. Bando would also support that proposition, and there's a right to an immediate appeal for any denial of the application of a substantive claim of immunity under Section 28 U.S.C. 1291. And so appellate jurisdiction is proper. Going back, I think, to what is the causal relationship issue that the Court is having related to the vaccine, let me just state that in page 5 of the appellee's brief, they state that Ms. Goins said this was attributable. They cite their own complaint and say Ms. Goins said, believed this was attributable to her COVID vaccine. That means that was her presenting condition. That's in the complaint. It's reiterated in their brief at page 5. And so this is an investigative process. I hear you, Your Honor, when you say, what's his subjective intent? Did he know he was treating the COVID vaccine? My esteemed opposing counsel says there was no literature. There was no literature because the COVID vaccine, the COVID virus didn't exist. And the COVID vaccine certainly didn't exist prior to December of 2020, just months before. And so there was no literature for people to know that's why it was a process of exclusionary diagnosis. That's why diagnoses process and the devices are protected under the PREP Act. Am I understanding you to say that if she had just said in her complaint in paragraph 27, like, I think this was a reaction to the COVID vaccine, that that would have been enough? She didn't even need to say the doctor said it could have been? Well, you have two things in the complaint, actually. You have her saying that she believes it is. She's connecting it. That's what doctors do every day in emergency rooms and doctor's offices. They take the presenting condition. And under your theory, that would have been enough alone? It would have been enough for the diagnosis process. Because the word, we have to remember the word diagnosis is in protecting the diagnosis process. And the providers of those diagnosis processes is throughout the PREP Act. It's not referenced once. It's referenced five or six, seven times. It is an essential part. Whenever you have a patient coming in, doesn't know what's wrong with them. And they said, I just got a vaccine a couple days ago. Now I'm having all these symptoms. Whatever the doctors do afterwards is covered by the PREP Act. When you have a national emergency declared by HHS. Is that answer yes? Yes, Your Honor, it is. When they have a national emergency. If I was to have a reaction to the flu shot I took a month ago, no. Why? There's been no HHS declaration. There's been no national global pandemic. All of these protections have not been invoked by the federal government. And so in these extraordinary circumstances. I think we all must understand that a statutory absolute immunity. Absolute civil immunity is an extraordinary statutory provision. And I think the issue before us today is are we going to give it effect or not. And so, you know, I believe that the error of the court, again to put a fine point on this. Is that the court believed that Warren had to be connected to the administration of the vaccine. And that's inaccurate. Congress has said under subsection I-7 that he only had to be. Wasn't that your argument below? Excuse me? Wasn't that your argument below that you were connecting him, Dr. Warren. That he was a qualified person because he was qualified to administer the vaccine. That was the main thing that you were arguing about. The argument below and I know Judge Griffin brought up that there may be waiver. And we briefed that thoroughly. We had two arguments below. One was that in fact it related to because of the breadth of the relating to causal statutory language. That it was related to the vaccine which in fact the court, the district court holds that it was on page 15. He says it was related to the vaccine. However, I find he's not a covered person because he didn't prescribe or administer the vaccine. And our point when we went in on the motion to amend or alter the judgment was that he did not. He actually administered the countermeasure of the biopsy device which is an FDA approved countermeasure under subsection I-7A. You argued that after the district court's decision. Well when it became clear that the court had misread subsection I-7 to believe that only the first part applied. We pointed out in the motion to alter amend that actually it fit under both the A-A-I and then A-2-I. But if he didn't argue both in your initial motion to dismiss, didn't you forfeit it? I mean you can't raise new issues on a motion to amend or a motion for reconsideration. On the motion to amend, we clarified that every time we were saying that he treated and diagnosed this, that that was necessarily covered by subsection I-7 but just in another provision of it. But that wasn't the basis of your motion to dismiss, the original motion was it? It was that he used a countermeasure. It was that it both related to the vaccine which was held by the court and that Dr. Warren was covered because he was treating a reaction to the vaccine. And so we did both and as is normal practice, if you believe a court missed something, if there was a misruling of law or fact, it's your obligation to clarify. We did in the court wrote a fairly lengthy, I think it's a six-page opinion, not at all citing the subsection II-I, but doubling down on the fact that he did not believe that he had administered the vaccine, which he had not administered the vaccine. Okay. I see you're out of time. Any further questions? Judge Batchelder? No, thank you. Thank you. Thank you, counsel. Case will be submitted.